JAMES TAD MANLOVE, Appellee, *vs.* STERLING P. LEMMON, Exr., Appellant. ·

*Opinion filed February 16, 1916.*

1. SPECIFIC PERFORMANCE—*a bid at a certain price per acre requires party to pay for actual acreage.* Where the bid of a party at a public sale of land is a certain price per acre he is bound to pay for the actual acreage in the absence of any subsequent modification of the contract.

2. SAME—*when memorandum of a contract is without effect.* Delivery of a written memorandum of a contract of sale to the purchaser is not essential to the validity of the memorandum as a contract if the parties intend that it shall take effect at once, but if the vendor retains possession of the memorandum, so that it will not show he has sold the land until he finds whether the check for the advance on the purchase price is good, the memorandum does not take effect as a contract binding upon him.

3. SAME—*an agreement for a survey of land sold at public sale need not be in writing.* Where a tract of land assumed to contain one hundred and sixty acres is sold at public sale at a bid of $150

per acre, a subsequent agreement for a survey of the land to ascertain the number of acres need not be in writing.

4. SAME—*existence of public highways over land does not constitute an incumbrance.* The fact that several acres of a tract of land bought at public sale at a bid of a certain price per acre are embraced in public highways does not afford a defense to a bill for specific performance, as the existence of the highways does not constitute an incumbrance, and the purchaser will acquire title to the land embraced by the highways as well as to that not so embraced.

5. SAME—*government survey fixes the corners but is not conclusive as to acreage.* Where land is purchased at a public sale at a certain price per acre and it is agreed the tract shall be surveyed, the corners fixed by the government survey establish the location of the tract to be surveyed; but if the survey made shows that the tract contains more or less than the quantity indicated by the field notes of the government survey, the rights of the parties are governed by the actual quantity of the land.

APPEAL from the Circuit Court of Schuyler county; the Hon. HARRY HIGBEE, Judge, presiding.

O'HARRAS, WOOD & WALKER, for appellant.

GLASS & BOTTENBERG, and L. A. JARMAN, for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

The appellant, Sterling P. Lemmon, was the executor of the last will and testament of William B. Manlove and was authorized by the will to sell certain real estate at public sale. He advertised such a sale for October 3, 1914, at the former residence of the testator, the terms being ten per cent cash, the balance in fifteen days from the date of sale. At the time and place mentioned the southeast quarter of section 6 in Birmingham township, Schuyler county, was offered for sale at public auction pursuant to the advertisement, and the appellee, James Tad Manlove, having bid $150 an acre for it and being the highest bidder, became the purchaser of the tract. The appellant had prepared a

blank memorandum of the sale, which he filled out immediately after the sale was completed, signed himself and presented to the purchaser, who also signed it. The quarter section was supposed to contain 160 acres, and the purchaser delivered to the appellant his check, which was intended to be for $2400 (ten per cent of the contract price) but by a mistake was written for $24 only. The appellee requested the appellant to hold the check for a short time, and thereupon the appellant stated that he would not deliver the contract but would hold it, because he did not want to pass a paper showing that he had sold the farm unless the check was good. The appellant discovered the error in the check, and on October 7, Manlove, the purchaser, gave him a new check for the right amount dated back to the day of the sale, and authorized the appellant to deed 50 acres off the west side of the land sold, to William E. Manlove. The $2400 check was cashed October 17, when the appellant gave the appellee the following receipt:

"Received of J. T. Manlove twenty-four hundred ($2400) dollars to apply on purchase of real estate, same being at rate of $150 per acre, and shall be surveyed. The time for final payment to be extended until survey is completed.          S. P. LEMMON, *Exr.*"

Afterward, by agreement between the appellant and the appellee, the land was surveyed and the quarter section was found to contain 167.89 acres. A dispute arose between the appellant and the appellee, the appellee insisting that he purchased the quarter section for $24,000 and was willing to pay that amount, while appellant insisted that he bought the tract at $150 an acre and that there were 167.89 acres in the tract and the appellee was bound to pay for that number of acres at the price per acre which he had bid. On November 30, 1914, the appellee filed a bill, which was afterward amended, praying for the specific performance of the sale according to the written memorandum thereof which had been prepared by the appellant on the day of the sale and had ever since remained in his possession but

a copy of which he had later given to the appellee at his request. That memorandum was as follows:

"BIRMINGHAM, ILL., *Oct. 3, 1914.*

"The undersigned has this day, at a public sale of the real estate of the late William B. Manlove, deceased, bought of Sterling P. Lemmon, executor of the estate of said deceased, the following described real estate, to-wit: South-east quarter Sec. 6, Birmingham township, Schuyler county, Illinois.   ·

~~for the sum of~~ $2400, of which the undersigned has this day paid to said executor the sum of $.............., the same to apply on ~~being at least ten per cent of~~ the purchase price above. stated, as provided for in the advertisements of said sale and the terms publicly announced and made known on the date of said sale. The balance of said purchase price shall be paid by the undersigned to said executor as hereinafter provided, to-wit:

"Said executor shall make, execute and acknowledge a proper deed of conveyance conveying to the undersigned the premises above described, which said deed and this agreement shall be deposited with the First Trust and Savings Bank of Augusta, Illinois, within five days from this date, and the said purchaser, the undersigned, hereby agrees to pay to said executor, or to deposit in his name and to his credit and for his account as such executor, in said First Trust and Savings Bank of Augusta, Illinois, the. sum of $21,600, the same being the balance due from the undersigned on account of the purchase of said real estate within fifteen days from this date, unless said time of payment shall be extended by said executor, such extension to be in writing and attached to this agreement. Purchaser to have possession of said premises on or before March 1, 1915.

"Witness our hands and seals the day and year first above written.                       TAD MANLOVE, *Purchaser.* (Seal).

S. P. LEMMON,
*Exr. last will and testament of Wm. B. Manlove, dec'd."*

The appellant answered, denying that the written contract set out in the bill had been delivered or become effective, and filed a cross-bill for the specific performance of the contract of sale of the land made at the public auction.

The only dispute between the parties is as to whether the appellee is bound to pay for 167.89 acres of land or only for 160 acres. There is no dispute that when the land was offered the bids were made by the acre. When the land was struck off to appellee at his bid of $150 an acre he therefore became bound to pay that price for each acre

in the tract. The written agreement prepared by the appellant did not state the contract made at the sale by the appellee's bid. It assumed that the tract contained 160 acres, and that the consideration was therefore $24,000. It might, on a proper state of the pleading and evidence, have been reformed to state the actual contract. The appellant, however, has not asked for a reformation but insists that the parties did not enter into the written contract. He testified that he told the appellee, when the latter requested him to hold the check, that he would fold the paper up and put it in his grip, because he would not want to pass a paper to the appellee showing that he had sold the farm unless the check was good. The appellee denies this, but the appellant is corroborated by the testimony of J. E. Manlove, who was present. The appellant did retain possession and control of the writing, and while delivery was not essential to its validity as a contract, if the parties intended it to take effect at once, the appellant's retention of it so that it might not show that he had sold the land prevented it from taking effect as a contract binding upon him. It clearly appears that the appellee bought the quarter section at $150 an acre, and it does not appear that the oral contract made by his bid at the public sale was afterward changed. The evidence does not show that anything further was said or done after the day of the sale in regard to the written contract.

The appellant in his cross-bill averred that a few days after the sale it was agreed between the appellee and all of the purchasers of the real estate at the sale and all the persons interested in the proceeds of the sale, that Jeff Horney should make a survey of the several tracts of land sold and ascertain and determine the acreage in each of those tracts; that in pursuance of that agreement Horney was employed to, and did, make the survey to determine the amount of land in the respective tracts and found that there were in the southeast quarter of section 6, 167.89 acres.

The appellee's answer denies the making of such agreement and also alleges that there was no memorandum or note of such agreement in writing and invokes the benefit of the Statute of Frauds.

Section 2 of the Statute of Frauds provides that "no action shall be brought to charge any person upon any contract for the sale of lands, tenements or hereditaments or any interest in or concerning them, for a longer term than one year, unless such contract or some memorandum or note thereof shall be in writing, and signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized in writing, signed by such party." The agreement for the survey of the land was not a contract for the sale of lands or any interest in or concerning them. By his contract the appellee was bound to pay for the land at the rate of $150 an acre. If the number of acres was not agreed upon, then the quantity of the land was to be determined by whatever competent evidence might be produced on that question. The parties might, however, agree upon a method of determining the quantity, and such an agreement would not in any way affect the contract of sale. The agreement to survey was no part of the contract of sale but was collateral to it and was not required to be in writing. Whether there was an agreement to survey or not, it was competent to prove that a survey was made and to show the number of acres in the tract. While the appellee denies the making of the agreement for Horney to survey the land, he stands alone against a number of witnesses testifying to the contrary. He did insist that he had not bought the land "that way,"—that is, by the acre or subject to a survey,—and he did not promise, when he agreed to the survey by Horney, to pay for the number of acres determined by Horney's survey. The facts, however, show that he did purchase by the acre, and the evidence does not show any change in his contract. He was not bound by Horney's survey if incorrect.

It is insisted that the number of acres must be determined by the government survey, and the plat and field notes of that survey were introduced showing the length of each side of the quarter to be forty chains. The corners established by the government survey fix the location of the tract surveyed, but if the tract surveyed actually contains more or less than the quantity indicated by the field notes the rights of the parties are governed by the actual quantity. The surveyor testified that he had had thirty-six or thirty-eight years' experience in surveying and that he found a corner stone at every corner of the quarter, and the evidence presents no question of the correctness of his survey making 167.89 acres in the quarter.

There are roads on three sides of the quarter, and the appellee insists that the evidence shows over five acres of the land are in the public highway, and that, in any event, he should not be required to pay for that. He will acquire title to that part of the land as well as to the rest, and under the statute the existence of the highway is not an incumbrance on the land. It is therefore no defense to a claim for payment.

The evidence does not show that the parties entered into the contract alleged in the original bill but does establish the verbal contract at the public sale. The appellee has always insisted upon his purchase according to the terms of the contract alleged in his bill and has refused to perform and pay for the number of acres which the evidence shows the land to contain. The appellant, on the contrary, has been ready and willing to execute a deed as required by the contract, upon payment by the appellee. The decree should have been for the specific performance of the contract as set forth in the cross-bill of the appellant and the original bill should have been dismissed.

The decree will be reversed and the cause remanded, with directions to enter a decree according to the prayer of the cross-bill. *Reversed and remanded, with directions.*